IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| American Towers, LLC, a Delaware limited liability company | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 16-cv-781 |
| Polnet Communications, Ltd., an Illinois Corporation | ) ) ) |
| Defendant. | ) |

## ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendant, Polnet Communications, Ltd, by and through its attorneys, and for its Answer and Affirmative Defenses to Amended Complaint states as follows:

## THE PARTIES

1. American Towers LLC ("AT") is a Delaware limited liability company with its principal place of business located at 10 Presidential Way, Woburn, MA 01801. AT is the successor in interest to American Towers, Inc. The sole member of AT is American Tower Corporation.

**ANSWER:** Defendant does not have sufficient information or knowledge to admit or deny this allegation.

2. AT is engaged, among other things, in the business of leasing and licensing cellular sites and towers to customers. The customers use the sites and towers to provide cellular, wireless, radio, and television services to their network of subscribers. The cellular tower site at issue in this matter is located in Milwaukee, Wisconsin.

**ANSWER:** Defendant admits that the tower at issue is located Milwaukee, Wisconsin. Defendant does not have sufficient information or knowledge to admit or deny the remaining allegation.

3. Polnet is a corporation organized under the laws of the State of Illinois and maintains its principal place of business at 3656 W. Belmont Ave., Chicago, IL 60618. Polnet's registered address is 55 W. Monroe Street, Suite 1200, Chicago, IL 60603. Polnet is in the business of owning and running radio stations in the United States.

**ANSWER:** Defendant admits the first two sentences of this allegation. Defendant admits that it operates radio stations in the United States, among other things, but denies that it solely owns and runs radio stations in the United States.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and Plaintiff and Defendant are of diverse citizenship.

**ANSWER:** Admit.

5. The Court has personal jurisdiction over Polnet by virtue of its continuous, systematic, and substantial contacts with the State of Wisconsin, including the leasing of property located in the State of Wisconsin.

**ANSWER:** Admit that Polnet entered into the lease that is the subject of this case. Object the remaining allegations as it calls for a legal conclusion.

6. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to AT's claims occurred in this judicial district, and the licensed property at issue in this action is located in this judicial district.

**ANSWER:** Admit that the lease at issue relates to property in this judicial circuit. Object the remaining allegations as it calls for a legal conclusion.

## FACTS

### The License Agreement

7. AT's predecessor, American Towers, Inc., and Polnet entered into a License Agreement on or about December 21, 2009 ("License Agreement"), pursuant to which Polnet received use of tower site number 75054, located in Milwaukee, Wisconsin (the "Milwaukee Tower") in exchange for monthly license fees. A true and correct copy of the License Agreement is attached hereto as **Exhibit 1** and incorporated by reference.

**ANSWER:** Admit that Defendant entered into the License Agreement which is attached as Exhibit 1. Defendant does not have sufficient information to admit or deny whether AT's predecessor is American Towers, Inc. Defendant denies any allegations inconsistent with the terms of the License Agreement.

8. The License Agreement provides that in exchange for a monthly license fee Polnet may use the Milwaukee Tower, including the transmission and receipt of radio frequencies and install, maintain, operate, service, modify and/or replace its approved equipment at the Milwaukee Tower.

**ANSWER:** Defendant admits that the License Agreement was entered into and is attached as Exhibit 1 with all pertinent terms included therein. Defendant denies any allegations inconsistent with the terms of the License Agreement.

9. The parties' license fee is $2,500.00 increased by an annual escalator of 5% on each anniversary of the commencement date.

**ANSWER:** Defendant admits that the License Agreement was entered into and is attached as Exhibit 1 with all pertinent terms included therein. Defendant denies any allegations inconsistent with the terms of the License Agreement.

10. The License Agreement provides that non-payment is an event of default, and, if non-payment is not cured within thirty days of default, Licensor is entitled to exercise all available remedies. These remedies include, but are not limited to, terminating the License Agreement, accelerating and declaring all monthly payments immediately due and payable, disconnection, removal and storage of any equipment, and recovery of penalties, interest, costs, and attorneys' fees.

**ANSWER:** Defendant admits that the License Agreement was entered into and is attached as Exhibit 1 with all pertinent terms included therein. Defendant denies any allegations inconsistent with the terms of the License Agreement.

11. The License Agreement provides that any equipment on the site is deemed abandoned by Polnet thirty days after the License Agreement is terminated if Polnet fails to remove its equipment beforehand.

**ANSWER:** Defendant admits that the License Agreement was entered into and is attached as Exhibit 1 with all pertinent terms included therein. Defendant denies any allegations inconsistent with the terms of the License Agreement.

12. In June, 2011, American Towers, Inc. was converted into American Towers LLC ("AT"). AT is the successor in interest to American Towers, Inc. as "Licensor" under the License Agreement.

**ANSWER:** Defendant does not have sufficient information or knowledge to admit or deny this allegation.

### Polnet's Breach of the License Agreement

13. Polnet failed to make the requisite monthly license fee payments under the License Agreement.

**ANSWER:** Defendant objects because the allegations fail to state which payments were not made. Notwithstanding, Defendant admits that certain payments due under the License Agreement were not made.

14. Following Polnet's continued failure to pay the monthly license fees, AT sent correspondence dated February 17, 2016 to Polnet providing formal and final written notice of Polnet's default for Polnet's failure to remit license fees on a monthly basis.

**ANSWER:** Defendant admits correspondence was sent, but denies that the notice was proper.

15. Plaintiff's February 17, 2016 default letter demanded payment of $98,483.97 for past license fees under the License Agreement, and provided a detailed accounting of the amounts due.

**ANSWER:** Defendant admits that the letter requested payment of $98,483.97 and that a spreadsheet was enclosed or attached to said letter. Defendant denies that the amounts requested are the accurate amount due and owing or that the default letter was proper.

16. In compliance with the License Agreement, AT provided Polnet with 30 days to cure the default and indicated that failure to cure would result in AT's pursuit of any and all remedies available under the License Agreement, including immediate termination of the License Agreement, acceleration of the amounts due, and imposition of AT's reasonable attorneys' fees, court costs, removal and storage fees for any equipment, and other costs reasonably incurred by AT in recovering these amounts.

**ANSWER:** Defendant denies that AT provided proper notice.

17. The thirty-day cure period expired on March 18, 2016 without Polnet remitting any payment under the License Agreement.

**ANSWER:** Defendant admits it did not send payment to American Tower Corporation between February 17, 2016 and March 18, 2016. Defendant denies proper notice was sent.

18. On April 29, 2016, AT accelerated all amounts due and owing. The acceleration was confirmed in correspondence sent to Polnet's counsel, Kevin V. Hunt, again seeking payment for amounts due and owing.

**ANSWER:** Defendant does not have sufficient information or knowledge to admit or deny the first sentence of this allegation. Defendant admits that Defendant's counsel received settlement communications from counsel for Plaintiff. Defendant denies all remaining all allegations.

19. Polnet has failed to cure its default and make payment to AT.

**ANSWER:** Defendant denies it received a proper notice of default.

20. As of June 30, 2016, Polnet owes $120,049.73 in past license fees, late fees, and interest under the License Agreement. Polnet's total, accelerated remaining liability, discounted by an annual percentage rate of 5% as required under the License Agreement, is approximately $272,938.06.

**ANSWER:** Defendant denies the amounts stated herein or that notice of default was proper.

21. AT has been forced to retain counsel, and incur other fees and costs, to enforce its rights under the License Agreement, all of which are recoverable from Polnet.

**ANSWER:** The terms of the License Agreement are as written. Defendant does not have sufficient information or knowledge to admit or deny the remaining allegation.

## COUNT I: BREACH OF CONTRACT

22. AT restates and realleges the preceding paragraphs as if set forth fully herein.

**ANSWER:** Defendant restates is responses for Paragraphs 1-21 as if stated herein.

23. The License Agreement constitutes a valid and enforceable contract, the terms of which are binding on AT and Polnet.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Defendant admits that Polnet signed the License Agreement. Defendant does not have sufficient information or knowledge to admit or deny whether AT is bound by the License Agreement.

24. AT has fully performed its obligations under the License Agreement.

**ANSWER:** Defendant denies that AT or any other entity has fully performed all obligations under the License Agreement to bring this lawsuit.

25. Polnet's payment of monthly license fees under the License Agreement is a material term of the License Agreement.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Notwithstanding, the terms of the License Agreement are as written.

26. Polnet breached this material term of the License Agreement by failing to make monthly licensing fee payments from April 2014 through the present.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Notwithstanding, Defendant admits that it has not paid certain licensing fees under the License Agreement.

27. AT has satisfied its contractual condition precedents by providing Polnet written notice of default and opportunity to cure default.

**ANSWER:** Deny.

28. Polnet failed to cure the default in payment under the License Agreement.

**ANSWER:** Deny that Defendant was given proper notice of payment default.

29. As a direct and proximate cause of Polnet's breach of the contractual payment provisions, AT has been damaged in an amount of $120,049.73, as of June 30, 2016, based on past licensing fees, late fees, and interest already accrued and due and owing under the License Agreement.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Notwithstanding, Defendant does not have sufficient information or knowledge to admit or deny this allegation.

30. Based on the acceleration provisions in the License Agreement, AT is entitled to damages in excess of no less than $272,938.06, which constitutes the remaining fee payments under the License Agreement discounted by an annual percentage rate equal to 5%, accrued late fees and interest to date, in addition to interest and late fees to be accrued in the future, removal and storage fees for the equipment, if any, reasonable attorneys' fees and costs, and field verification expenses and other costs associated with Polnet's breach, the exact amount to be determined at trial.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Notwithstanding, Defendant does not have sufficient information or knowledge to admit or deny this allegation.

## COUNT II: ACCOUNT STATED

31. AT restates and realleges the preceding paragraphs as if set forth fully herein.

**ANSWER:** Defendant restates is responses for Paragraphs 1-21 as if stated herein.

32. AT prepared and delivered regular invoices or correspondence to Polnet for monthly license payments pursuant to the License Agreement.

**ANSWER:** Defendant received certain invoices, but does not have sufficient information or knowledge to admit or deny which invoices or correspondence was received.

33. Having received the invoices, Polnet did not object to the invoices or the information contained therein.

**ANSWER:** Defendant does not have sufficient information or knowledge to admit or deny which invoices or correspondence was received or commented on.

34. Despite having received and accepted the invoices, without objection, Polnet has failed to make full payment to AT under the License Agreement.

**ANSWER:** Defendant admits that it has not paid certain licensing fees under the License Agreement. Defendant does not have sufficient information or knowledge to admit or deny which invoices or correspondence was received or commented on.

35. Polnet's acceptance of the invoices, without objection, constitutes an account stated.

**ANSWER:** Object to the extent that the allegation is a legal conclusion.

36. As a result, AT has suffered damages of no less than $272,938.06, which constitutes the remaining fee payments under the License Agreement discounted by an annual percentage rate equal to 5%, accrued late fees and interest to date, in addition to interest and late fees to be accrued in the future, removal and storage fees for the equipment, if any, reasonable attorneys' fees and costs, and field verification expenses and other costs associated with Polnet's breach, the exact amount to be determined at trial.

**ANSWER:** Object to the extent that the allegation is a legal conclusion. Notwithstanding, Defendant does not have sufficient information or knowledge to admit or deny this allegation.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Improper Notice

1. Plaintiff American Towers, LLC is a distinct entity from former Plaintiff American Towers Inc.

2. American Towers Inc. initially filed suit in the instant case.

3. American Towers Inc. is a party to the License Agreement that is the subject of this litigation.

4. Plaintiff American Towers, LLC failed to provide any notice of default or other notice as required under the License Agreement.

5. The License Agreement does not allow American Towers, LLC or any entity to pursue collection of fees under the License Agreement with proper notice.

6. Any notices sent to Defendant by American Tower Corporation related to the License Agreement were improperly addressed and failed to comply with the notice provisions of the License Agreement.

7. Defendant was not given proper notice of default by American Towers, LLC, American Towers Inc. or American Tower Corporation.

### Second Affirmative Defense - Waiver

8. Plaintiff has not pursued action against Defendant despite the alleged non-payment of fees under the License Agreement.

9. Plaintiff allowed large amount of fees and interest to accrue without notice to Defendant.

10. Defendant should not be required to pay additional fees and interest where those amounts were not originally requested from Plaintiff.

11. Plaintiff failed to take action on allegedly delinquent notices.

### Third Affirmative Defense – Mitigation of Damages

12. Plaintiff claim for future damages are for fees that would not have been incurred absent acceleration of the entire contract amount.

13. Plaintiff has failed to take any action to mitigate future damages.

14. Plaintiff delayed in seeking enforcement of unpaid fees.

15. Plaintiff has not demonstrated that it attempted to mitigate damages by finding a new licensee to use the space.

16. Plaintiff is required to mitigate its damages.

### Fourth Affirmative Defense – Failure to Provide Invoices

17. Defendant did not receive monthly invoices starting in 2014.

18. On information or belief, Plaintiff failed to send monthly invoices or accounts since 2014.

19. Plaintiff waived its right to collect past due invoices when it failed to send notices.

20. Plaintiff cannot pursue a claim for account stated if it failed to request payment.

### JURY DEMAND

Defendant demands a trial by jury.

Respectfully submitted,

**Polnet Communications, Ltd.**

By: __s/ Kevin V. Hunt____
    One of its attorneys

Kevin V. Hunt (IARDC 6283126)
Stahl Cowen Crowley Addis LLC
55 West Monroe, Suite 1200
Chicago, Illinois 60603
(312) 377-7764
khunt@stahlcowen.com

<u>**CERTIFICATE OF SERVICE**</u>

       I, Kevin V. Hunt, an attorney, electronically filed this **ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**, on August 9, 2016, by filing same with the Clerk of the Court through the CM/ECF Filing System, and which delivers the same to the following:

**Electronically:**
Joshua A. Hasko
Matthew P. Lindeman
Messerli & Kramer P.A.
100 South Fifth Street, Suite 1400
Minneapolis, MN 55402-4218
jhasko@messerlikramer.com
mlindeman@messerlikramer.com

                                                          /s/ Kevin V. Hunt